(164 App. Div. 259)

WATTS v. DOULL MILLER CO.   (No. 6129.)

(Supreme Court, Appellate Division, First Department.   November 6, 1914.)

1. TRIAL (§ 387*)—FINDINGS—SUFFICIENCY OF FINDINGS—"DECISION."

Code Civ. Proc. § 1022, requiring a "decision" to state separately the facts found and the conclusions of law and direct entry of judgment, is not complied with by noting the words "Found" or "Refused" after requests to find, with the initials of the trial justice beneath, printed in the judgment roll and indexed in the record as the decision; such decision being not merely an imperfect, but an invalid decision.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 903–907; Dec. Dig. § 387.*

For other definitions, see Words and Phrases, First and Second Series, Decision.]

2. TRIAL (§ 396*)—ACTION FOR BREACH OF CONTRACT—FINDINGS—CONFORMITY TO PLEADINGS.

Where the complaint alleged a breach of a contract whereby defendant was to finance plaintiff's business, which was obtaining orders for the manufacture of dress goods, in that defendant, who was to guarantee such orders to the manufacturer, refused to permit the placing with mills of many orders of solvent customers which plaintiff had obtained, and the evidence was that deliveries were made to the buyer from the mills, after payment by and the receipt of the shipping orders from defendant, findings that defendant breached the contract by failing to "fill" confirmed and approved orders in full, and only "delivered" part of such order, were not within the issues and evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 935–938; Dec. Dig. § 396.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CONTRACTS (§ 322*)—ACTION FOR BREACH—SUFFICIENCY OF EVIDENCE.

Evidence in an action for breach of a contract to pay for orders placed by plaintiff, after confirmation by the customer and approval by defendant, *held* not to show that defendant failed in approving orders obtained by plaintiff after they had been confirmed by his customer.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1306, 1307, 1339, 1347, 1348, 1465, 1492, 1534–1542, 1754, 1768, 1772, 1801, 1802, 1804–1808, 1815, 1816; Dec. Dig. § 322.*]

4. CONTRACTS (§ 322*)—ACTION FOR BREACH—EVIDENCE.

Findings against defendant in an action for breach of its contract to guarantee the accounts of plaintiff's customers after orders had been confirmed by such customers and approved by it *held* not supported by the evidence.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1306, 1307, 1339, 1347, 1348, 1465, 1492, 1534–1542, 1754, 1768, 1772, 1801, 1802, 1804–1808, 1815, 1816; Dec. Dig. § 322.*]

Appeal from Special Term, New York County.

Action by Stephen K. Watts against the Doull Miller Company. From an interlocutory judgment directing an accounting, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Dean Emery, of New York City, for appellant.
L. Laflin Kellogg, of New York City, for respondent.

McLAUGHLIN, J. Appeal from an interlocutory judgment directing defendant to account before a referee named therein. On the 3d of May, 1904, plaintiff was, and for some time prior thereto had been, engaged in the sale of dress goods, so called, and desiring to induce defendant to furnish the necessary means and facilities for carrying on the business, on that day entered into a contract with it, under the terms of which orders placed with mills manufacturing the goods were to be paid for by defendant and the accounts of the customers guaranteed. Before, however, any orders could be placed with mills by plaintiff, they had to be approved by defendant and confirmed by the customers. For making such payment and guaranty defendant was to receive a commission of 5 per cent. of the net amount of the sale, and any profits thereafter remaining were to belong to plaintiff. The contract contained other provisions, which it is unnecessary, in view of the question presented, to consider.

[1] This action was brought for an accounting and to recover damages alleged to have been sustained by plaintiff by reason of defendant's breach of the contract. The defendant denied that it had failed to perform the contract on its part, and alleged that the plaintiff was indebted to it for advances, overdrafts, and misappropriations, for which it demanded judgment. At the close of the evidence requests to find—which are printed in the record—were presented by both plaintiff and defendant, with the words "Found" or "Refused" after each, and initials corresponding to those of the trial justice subscribed underneath. The judgment roll, as required by the Code, contains no decision stating separately the facts found and conclusions of law, and directing judg-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment to be entered thereon, authenticated by the official signature of the trial justice at length, but instead only the plaintiff's proposed findings of fact and conclusions of law, subscribed as above stated, and printed in the judgment roll. It is indexed in the record as the decision, but is not such a decision as is required by the Code of Civil Procedure to support a judgment. Section 1022, Code Civ. Proc. It is not merely an imperfect decision, similar to the one pointed out by this court in Brewster v. Brewster Co., 145 App. Div. 812, 130 N. Y. Supp. 654, but an invalid one, such as was considered in Smith v. Geiger, 202 N. Y. 306, 95 N. E. 706.

The judgment, therefore, in any view, would have to be reversed, and the case sent back to the trial justice, to the end that a decision as contemplated by the statute might be made. This, however, if the judgment could be sustained in other respects, would not necessitate ordering a new trial. A careful consideration of the record shows that the judgment, even if sustained by a proper decision, would have to be reversed, since the evidence does not show that the plaintiff is entitled to an accounting.

[2] The complaint sets out the agreement between the parties, by the terms of which plaintiff was to give his exclusive time and services to the obtaining and selling of dress goods and the conduct of his business organized for the sale of the same; that the business was to be financed by the defendant, but that all orders placed with mills for goods should be first countersigned by the defendant, though not until same had been confirmed by the customer. It then alleges, in paragraph fourth, a failure on the part of the defendant to perform the contract in seven specified respects, designated by the letters "A" to "G," both inclusive. All claims under the letter "A" were withdrawn in a bill of particulars served by plaintiff, and at the conclusion of the trial the learned justice before whom the action was tried did not find that the defendant had been guilty of a breach of the contract in any respect, except as specified under the letter "B." The allegations as to these are that at various times during the years 1905 and 1906 the plaintiff procured many orders for dress goods and for large amounts from his customers, all of whom were in every way financially responsible, and with whom plaintiff and defendant had theretofore transacted business, and for whom they had filled numerous orders, which were taken to the defendant for its confirmation and were countersigned by it, but that, notwithstanding plaintiff informed defendant of various mills of good standing at which plaintiff and defendant had previously had an account, and that the manufacture of such goods could be obtained, the defendant refused, without just ground therefor, to allow the same to be placed with such mills, although large profits could have been realized therefrom.

It appears from the evidence that the method of business pursued under the contract, as stated by the plaintiff, was as follows: He would procure an order from his customer for the purchase and delivery of certain goods to be manufactured; after the order had been obtained, it was taken by him to the defendant for approval, both as to the credit and terms; the order for the manufacture of the goods under the contract could not be placed with the manufacturer by the plaintiff un-

til it had been confirmed by the customer and approved by the defendant, since they were manufactured on its credit and liability alone; the goods, when manufactured as required by the approved order, were delivered to the customer in accordance with the shipping direction given by the defendant; and defendant paid for the manufacture and received all of the purchase price from the customer. This statement of the respondent as to the course of business under the contract is in accordance with the contract itself and the allegations of the complaint. It is also in accord with the testimony of the plaintiff, who stated that he placed the mill order after it had been confirmed by the customer and approved by the defendant.

Upon the allegation of the breach of the contract by defendant, and the proof offered by plaintiff to sustain the same, the trial justice made 40 findings of fact, numbered fifth to forty-fourth, inclusive, each containing (except the fifth), after a statement that the plaintiff in performance of the contract obtained an order for a specified number of pieces and presented it to the defendant for its confirmation and approval, substantially the following language:

"That the defendant duly approved, accepted, and confirmed said order, and thereafter the defendant, disregarding its obligations under said contract, failed and refused to *fill* such order in full, and only *delivered*" a specified number of pieces, less than called for by the order; "that, if the defendant had filled and carried out said order and contract in full, there would have been on an accounting a sum of money due and coming to the plaintiff."

The findings hold the defendant liable for the breach of a contract to fill orders and deliver goods. This was not the contract. There was no such obligation resting upon it under the contract, nor was such breach either pleaded or proved. The obligation of the defendant under the contract was not to fill the orders, but simply to finance the plaintiff's business. It was to act as his fiscal agent. But before an order could be placed with the mills, the order of plaintiff's customer had to be confirmed, and then the order itself approved by the defendant. The goods, after they had been manufactured, had to be bleached before shipping to the customer in accordance with shipping directions given by the defendant. The method in this respect, according to the testimony of the plaintiff, was for him to prepare a shipping tag, which was submitted to the defendant for approval as to the credit of the consignee, and then sent by the plaintiff to the bleacher. Whatever supervision the defendant took over the filling and delivery of the order was purely for its own protection in lending its credit to the plaintiff.

[3] There is, therefore, no basis under the contract, the complaint, or proof for a finding making the defendant liable because it failed to fill orders obtained by the plaintiff, since it was under no obligation whatever to do so. All it had to do, as before indicated, was to approve the orders obtained by the plaintiff after the same had been confirmed by his customer. The proof does not establish that the defendant failed in this respect.

[4] The fifth finding is to the effect that the defendant collected from a customer the purchase price of orders filled and that there was due plaintiff out of such moneys an amount for which the defendant had not accounted. The trial court, as appears from his opinion, re-

fused to find that the defendant had breached the contract in this respect; nor am I able to find any allegation in the complaint justifying a recovery upon this ground, or any proof in the record to sustain the finding.

There are other findings which are not supported by, but are directly contrary to, the evidence; e. g., the eleventh and twelfth findings, holding the defendant liable for the nondelivery of 2,852 pieces of a customer's order for 4,000 pieces. The evidence bearing upon this subject is that orders for all these pieces were placed with the mills in the customary manner, and that the mill orders were canceled by the plaintiff on account of failure of the mill to deliver on time. The thirteenth finding holds defendant responsible for a failure to fill an order for 5,000 pieces, notwithstanding the plaintiff testified, and his testimony in this is uncontradicted, that the defendant permitted him to place mill orders for these identical goods. The fourteenth finding holds defendant liable for failure to fill an order for 2,000 pieces, yet plaintiff himself testified that a mill order for those goods was placed in the customary way, and that the nondelivery was for the reason that the customer refused to accept the goods.

Since there must be a new trial, it is unnecessary to refer to other findings which seem to me to be against the evidence.

The judgment appealed from, therefore, is reversed, and a new trial ordered, with costs to appellant to abide event. All concur.